■ Welch Foods, Inc., Appellant, v Ralph W. Wilson et al., Defendants, and Village of Westfield, Respondent, and Third-Party Plaintiff. Mogen David Wine Corporation et al., Third-Party Defendants-Respondents. [716 NYS2d 243] —Order unanimously modified on the law and as modified affirmed without costs in accordance with the following Memorandum: The long-standing dispute in this action involves the calculation of sewer rents paid to the Village of Westfield (defendant) for its receipt of wastewater generated by plaintiff. Defendant constructed a water pollution control plant (plant), completed by 1976, that was financed in part through Federal and State grants. Plaintiff and defendant entered into an agreement in 1975 (Sewer Agreement) pursuant to which defendant agreed to accept wastewater from plaintiff. Plaintiff was to pay operation and maintenance costs (user charges) based on its percentage share of the biochemical oxygen demand (BOD5) and phosphorus components of wastewater received at the plant. At the request of the Federal Environmental Protection Agency (EPA), the Village Sewer Ordinance was amended in 1975 and 1977 to add a flow component and a total solids component in addition to the BOD5 and phosphorous components specified in the Sewer Agreement. The Sewer Agreement also set forth design capacity allocations (assigned capacity) for BOD5, phosphorous, total solids, and flow content of plaintiff's wastewater, representing the maximum amount and strength of wastewater plaintiff was allowed to send to the plant.

Pursuant to the Sewer Agreement, defendant was to charge plaintiff based on its assigned capacity until such time as plaintiff installed and tested the appropriate equipment to measure the volume and composition of its wastewater discharges. Plaintiff installed the equipment in September 1984 and requested that defendant charge plaintiff based on its measured discharges rather than its assigned capacity. Notwithstanding the provisions of the Sewer Agreement regarding charges based on actual use, defendant continued to charge plaintiff based on its assigned capacity. In 1986 the Sewer Ordinance was amended (1986 Sewer Ordinance) to provide that wastewater charges would be calculated using two components. The first was the "variable cost," which was based on the actual amount of BOD5, phosphorous, total solids, and flow content of wastewater sent by the user to the plant. The second was the "fixed cost," which was dependent upon the user's assigned capacity.

Plaintiff commenced this action in 1985 alleging, *inter alia,* that defendant breached the Sewer Agreement by failing to

charge plaintiff based on plaintiff's actual use rather than plaintiff's assigned capacity. Discovery and motion practice ensued, and several appeals were taken to this Court. Plaintiff now appeals from an order granting defendant's motion for summary judgment dismissing the second amended complaint and denying plaintiff's cross motion for summary judgment. We conclude that Supreme Court should have denied defendant's motion with respect to four of the 21 causes of action asserted in the second amended complaint.

Preliminarily, we disagree with plaintiff that the circumstances surrounding the present motion by defendant denied plaintiff due process of law. Defendant has moved for summary judgment on multiple occasions, and "multiple summary judgment motions in the same action should be discouraged in the absence of newly discovered evidence or sufficient cause" (*Public Serv. Mut. Ins. Co. v Windsor Place Corp.*, 238 AD2d 142, 143; *see, Town of Wilson v Town of Newfane*, 192 AD2d 1095). Here, there was sufficient cause for defendant's present motion, in view of the lengthy history of this case, including ongoing discovery. In addition, we note that plaintiff itself has made several motions for summary judgment, including the current cross motion. We disagree with plaintiff that there was a violation of CPLR 3212 (a). Pursuant to that statute, unless the court provides otherwise, a motion for summary judgment shall be made no later than 120 days after the filing of the note of issue "except with leave of court on good cause shown." The court has discretion to consider motions made after the 120 days (*see, Gonzalez v 98 Mag Leasing Corp.*, 95 NY2d 124; *Rossi v Arnot Ogden Med. Ctr.*, 252 AD2d 778, 779), and we conclude that the court did not abuse its discretion in allowing the motion by defendant. Plaintiff also contends that defendant's motion was premature because discovery was not yet completed (*see,* CPLR 3212 [f]). Plaintiff made only conclusory statements in support of that contention, however, and failed to demonstrate that facts essential to its opposition of defendant's motion may exist (*see, Murray v SYSCO Corp.*, 273 AD2d 760; *Santangelo v Fluor Constructors Intl.*, 266 AD2d 893, 894; *State of New York v County of Erie*, 265 AD2d 853).

In our prior decision, we held that plaintiff has no private right of action or 42 USC § 1983 claim under the Federal Water Pollution Control Act ([FWPCA] 33 USC § 1251 *et seq.*), relying upon *Middlesex County Sewerage Auth. v National Sea Clammers Assn.* (453 US 1, 14-18; *Welch Foods v Wilson*, 262 AD2d 949, 951). Plaintiff contends, relying upon *Village of Westfield v Welch's* (170 F3d 116), a related action, that the

court erred in refusing to consider defendant's alleged violation of the FWPCA to support several causes of action set forth in the second amended complaint. Although plaintiff is limited to the judicial remedies provided in the FWPCA (*see, Middlesex County Sewerage Auth. v National Sea Clammers Assn., supra,* at 14-18) for alleged violations of that statute, we agree with the Second Circuit that "[t]he FWPCA and EPA regulations form the basis and background under which the sewer agreement and the grant agreements must be analyzed" (*Village of Westfield v Welch's, supra,* at 124).

The court erred in dismissing the first cause of action, alleging breach of contract based on the alleged breach of the Sewer Agreement. The court determined as a matter of law that the Sewer Agreement allowed defendant to change any term of the agreement unilaterally by an amendment to the Sewer Ordinance. We disagree. Paragraph 5 of the Sewer Agreement provides that "[a]cceptance of such sewage from [plaintiff] by [defendant] shall be subject to the applicable provisions of the Sewer Ordinance * * * as it may be amended or revised from time to time." The paragraphs preceding that paragraph concern the acceptance of sewage by the Village, and it is not until paragraph 8 of the Sewer Agreement that the calculation of user charges is set forth. While paragraph 5 refers to amendments to the Sewer Ordinance and the acceptance of sewage, it is silent with respect to the calculation of user charges. At the very least, the provision in paragraph 5 is ambiguous and does not warrant the dismissal of the first cause of action (*see, Dobco, Inc. v Facilities Dev. Corp.,* 263 AD2d 592, 593; *Durban v Smith,* 248 AD2d 502).

Defendant contends that the Sewer Agreement was voidable pursuant to General Municipal Law § 452 (former [2]), which then provided in relevant part that "sewer rents may be established and imposed * * * only by local law or ordinance" (*see, Matter of Village of Canastota [Queensboro Farm Prods.],* 44 AD2d 276, 278-279, *affd* 36 NY2d 793). The plant, however, was constructed using Federal funds, and is thus governed by the provisions of the FWPCA. The FWPCA requires that, as a condition for a Federal grant for the construction of the plant, defendant must establish a user charge system that reflects proportionate use of the plant (*see,* 33 USC § 1284 [b] [1] [A]). The implementing regulations provide that "[o]ne or more municipal legislative enactments *or other appropriate authority* must incorporate the user charge system" (40 CFR 35.929-2 [e] [emphasis added]). Thus, while General Municipal Law § 452 (former [2]) does not permit defendant to establish user charges

by anything other than local law or ordinance, the FWPCA, together with its implementing regulations, permits defendant to establish user charges by any "other appropriate authority," including by contract (*see generally,* 40 CFR 35.970).

The court properly dismissed the second cause of action, alleging unjust enrichment, and the third cause of action, alleging conversion. The existence of the Sewer Agreement precludes recovery in quasi contract for events arising out of the same subject matter (*see, Clark-Fitzpatrick v Long Is. R. R. Co.,* 70 NY2d 382, 388-389; *Eagle Comtronics v Pico Prods.,* 256 AD2d 1202, 1202-1203), and recovery in conversion for the money paid by plaintiff to defendant for its user charges (*see, Woodward, Inc. v WCSC, Inc.,* 88 AD2d 883, 883-884).

The court properly dismissed the fourth cause of action, alleging breach of contract based on the alleged breach of the Federal and State Grant Agreements. Those grant agreements were made between defendant and the EPA and defendant and the State Department of Environmental Conservation. Plaintiff was not a party to those agreements. As a third party seeking to enforce a contract, plaintiff had to establish that it was an intended beneficiary of the contract rather than merely an incidental beneficiary (*see, Fourth Ocean Putnam Corp. v Interstate Wrecking Co.,* 66 NY2d 38, 43-44; *Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652, 655; *Cole v Metropolitan Life Ins. Co.,* 273 AD2d 832). Here, plaintiff failed to establish that it was an intended beneficiary.

The court erred in dismissing the sixth cause of action, alleging a violation of the Contract Clause (US Const, art I, § 10, cl [1]) with respect to the Sewer Agreement. "The Contract Clause of the United States Constitution prohibits a State from passing any law impairing the obligation of contracts" (*Association of Surrogates & Supreme Ct. Reporters v State of New York,* 79 NY2d 39, 46). There is a triable issue of fact whether defendant, in enacting the 1986 Sewer Ordinance, impaired its contract with plaintiff (i.e., the Sewer Agreement) (*cf., Suffolk County Police Benevolent Assn. v County of Suffolk,* 273 AD2d 222). The court, however, properly dismissed the seventh cause of action, alleging a violation of the Contract Clause with respect to the Federal and State Grant Agreements. As noted earlier, plaintiff was not a party to those agreements.

The court properly dismissed the eighth, ninth, tenth, and thirteenth causes of action, alleging the denial of plaintiff's right to due process, and the eleventh and twelveth causes of action, alleging the denial of plaintiff's right to equal protection. Plaintiff alleges that defendant's enactment of the 1986

Sewer Ordinance was arbitrary, unreasonable, and unlawful. The 1986 Sewer Ordinance, an economic regulation, is presumed constitutional, and the burden is on plaintiff, the party alleging the unconstitutionality of the ordinance, to establish that defendant acted in an arbitrary and irrational way (*see, Duke Power Co. v Carolina Envtl. Study Group,* 438 US 59, 83; *Usery v Turner Elkhorn Min. Co.,* 428 US 1, 15). The ordinance must bear "a reasonable relation to [defendant's] legitimate purpose" in enacting it (*Exxon Corp. v Governor of Md.,* 437 US 117, 125).

Sewer charges must "bear a rational relationship to the amount of use" (*Matter of Hull v Town of Warrensburg,* 207 AD2d 37, 40; *see, Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52, 61; *Arcuri v Village of Remsen,* 202 AD2d 991, 992-993). The 1986 Sewer Ordinance provides for the calculation of sewer rents based on the amount of actual sewage a user sent to the plant (variable cost) and based on the user's assigned capacity (fixed cost). Although the fixed cost is not based on the "volume and character" of the sewage, it constitutes an "equitable basis" for calculating sewer rents (General Municipal Law § 451 [1] [d], [e]). A large plant was constructed based on the estimated use of the plant by industrial users such as plaintiff. When plaintiff moved a substantial portion of its operations out of New York State prior to 1986, the plant became underutilized. Defendant enacted the 1986 Sewer Ordinance, with its provisions for variable and fixed costs, to compensate for its lost revenue due to the underutilization of the plant. The assigned capacity was a benefit to plaintiff; plaintiff was allowed to sell to another industrial user any unused portion of its assigned capacity. We thus conclude that the sewer rents as outlined in the 1986 Sewer Ordinance bore a rational relationship to plaintiff's use.

Plaintiff further contends that the 1986 Sewer Ordinance is unconstitutional because it conflicts with the FWPCA. The FWPCA requires defendant, as the recipient of a Federal grant for construction of the plant, to establish a user system that assures "that each recipient of waste treatment services * * * will pay its proportionate share * * * of the costs of operation and maintenance (including replacement) of any waste treatment services" provided by defendant (33 USC § 1284 [b] [1] [A]). The EPA has sent letters to defendant advising it that its reliance upon fixed costs, rather than actual use, is in violation of the FWPCA. Even assuming that the EPA is correct in its interpretation of the FWPCA, however, we conclude that plaintiff has not established that the 1986 Sewer Ordinance is

"wholly arbitrary" (*New Orleans v Dukes,* 427 US 297, 304; *see, Hotel Empls. Assn. v Gorsuch,* 669 F2d 1305, 1311).

Contrary to plaintiff's contention, the 1986 Sewer Ordinance "clearly define[s]" the calculation of sewer rents based on variable and fixed costs (*Grayned v Rockford,* 408 US 104, 108). Plaintiff further contends that it was discriminated against as part of the class of industrial users, and discriminated against within that class, in violation of its right to equal protection. The general rule with respect to equal protection claims is that a legislative body is presumed to act within its constitutional power despite the fact that, in practice, its laws " 'result in some inequality' " (*Nordlinger v Hahn,* 505 US 1, 10). "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate [governmental] interest" (*Nordlinger v Hahn, supra,* at 10). The 1986 Sewer Ordinance setting forth sewer rents does not involve a fundamental right or categorize based on an inherently suspect characteristic. The ordinance thus carries a "strong presumption of validity" (*Heller v Doe,* 509 US 312, 319), and does not violate plaintiff's right to equal protection if there is a rational relationship between the disparity of treatment and some legitimate governmental interest (*see, Port Jefferson Health Care Facility v Wing,* 94 NY2d 284, 289-290, *cert denied* — US —, 120 S Ct 2744). We conclude that the 1986 Sewer Ordinance, which requires industrial users to pay based in part on their assigned capacity, bears a rational relationship to defendant's need to finance the costs of operating the plant.

The fourteenth cause of action, based on 42 USC § 1983, was properly dismissed. Section 1983 does not create any substantive rights; it provides a procedural mechanism for asserting the violation of a Federal right (*see, Bruneau v South Kortright Cent. School Dist.,* 163 F3d 749, 756, *cert denied* 526 US 1145), and is "an independent safeguard against deprivations of federal constitutional and statutory rights" (*Smith v Robinson,* 468 US 992, 1012). Section 1983 is a statutory remedy, and Congress retains the authority to repeal or replace it with an alternative remedy (*see, Smith v Robinson, supra,* at 1012), which it did here by the enactment of the FWPCA (*see, Middlesex County Sewerage Auth. v National Sea Clammers Assn., supra,* 453 US, at 14-18). Plaintiff is not only precluded from asserting a section 1983 claim based on the FWPCA (*see, Middlesex County Sewerage Auth. v National Sea Clammers Assn.,*

*supra,* at 14-18; *Welch Foods v Wilson, supra,* 262 AD2d, at 951), but is also precluded from asserting a section 1983 claim based on an alleged constitutional violation because that claim is based on the same factual predicate as the attempted claim under the FWPCA (*see, Bruneau v South Kortright Cent. School Dist., supra,* at 758; *Waid v Merrill Area Pub. Schools,* 91 F3d 857, 862-863; *Pfeiffer v Marion Ctr. Area School Dist.,* 917 F2d 779, 789).

The court properly dismissed the twenty-first cause of action, alleging fraud, to the extent that the allegations of fraud relate to the alleged breach of the underlying contract (*see, Crawford Furniture Mfg. Corp. v Pennsylvania Lumbermens Mut. Ins. Co.,* 244 AD2d 881, 881-882). The fraud cause of action also was properly dismissed to the extent that the allegations of fraud otherwise are based on a statement of future intent. Defendant established that, when it entered the contract, it intended to honor that contract and plaintiff failed to raise a triable issue of fact (*see, G & F Assocs. Co. v Brookhaven Beach Health Related Facility,* 249 AD2d 441, 443, *lv denied* 92 NY2d 807; *Szwajkos v Cheney,* 166 AD2d 885).

Plaintiff's contentions with respect to the remaining causes of action have been abandoned on appeal (*see, Ciesinski v Town of Aurora,* 202 AD2d 984) or are without merit. We have considered defendant's contentions concerning the untimeliness of plaintiff's action and conclude that they are lacking in merit. We modify the order, therefore, by denying that part of defendant's motion seeking dismissal of the first, sixth, fifteenth, and sixteenth causes of action and reinstating those causes of action. (Appeal from Order of Supreme Court, Chautauqua County, Gerace, J.—Summary Judgment.) Present—Pigott, Jr., P. J., Green, Hayes, Kehoe and Lawton, JJ.